CASEY et al. v. CITY OF CANTON.

(District Court, N. D. Ohio, E. D. February 28, 1918.)

1. CONTRACTS ⬥⟿284(4)—DECISION OF ENGINEER OR ARCHITECT—EFFECT.
   Where construction contract provided that work should be done under the supervision of an engineer, who was empowered to determine classification and allow estimates, his decision can be impeached only for fraud and gross mistake, implying bad faith.

2. MUNICIPAL CORPORATIONS ⬥⟿374(1)—CONTRACTS—CONSTRUCTION.
   Where city enters into a contract with a contractor to build a building or lay a sewer, it warrants, just the same as a private owner would warrant, delivery of the site upon which the work is to be constructed, and in event of failure is responsible to the contractor for damages resulting.

3. MUNICIPAL CORPORATIONS ⬥⟿370—CONTRACTS—LIABILITY.
   Where municipality, which contracted for the laying of a sewer, did not have title to the site selected, and the contractor was by that reason delayed and injured, *held* that, the municipality being liable for such damages, payment could properly be made without any supplemental contract.

4. MUNICIPAL CORPORATIONS ⬥⟿370—CONTRACTS—LIABILITY.
   Where a municipality, which contracted for the laying of a sewer, did not own the site selected, and the contractor was damaged, *held* that, having paid such damages, the municipality could not recover the same, nor set them off in an action by the contractor, though the procedure for payment was irregular.

At Law. Action by John F. Casey and others against the City of Canton. On motion of plaintiff to direct a verdict. Motion granted.

Squire, Sanders & Dempsey and Wm. L. Day, both of Cleveland, Ohio, for plaintiffs.

Clarence A. Fisher, City Sol., and Walter S. Ruff, both of Canton, Ohio, for defendant.

WESTENHAVER, District Judge. [1] The attitude of counsel for the defendant as to the larger item of the counterclaim renders unnecessary any discussion of that. I need only repeat, so far as that is concerned, what counsel have said, that whether or not that foundation embankment should be classified and paid for under item 29 of the specifications was a matter to be determined by the engineer. He was agreed upon by the city of Canton, or the proper authorities of the city of Canton, on the one part, and the John F. Casey Company, upon the other, as the person under whose supervision and direction the work should be done, and who was empowered to determine the question of classification, and to make estimates and allow them. He made his determination, and there is nothing here to impeach the good faith or honesty of his determination.

The law is perfectly well settled in this jurisdiction, although it seems to be a little confused in the state courts, that the decision of an engineer or an architect in that situation is binding upon both parties, and can be impeached only for fraud or such gross mistake as implies bad faith.

Therefore, as to the larger item of 2,961 cubic yards of foundation embankment, I concur entirely in the judgment of the representatives

⬥⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the city of Canton in saying that there is no basis upon which to seek to recover any part of it back, and there is no ground upon which to defend against an action by the Casey Company to recover the amount of the final estimate, which was approved.

Now, let us pass to the other item, the $2,000 item, which is the item embodied in the so-called supplementary contract of August 24, 1915. The testimony here shows that, at the time the contract was let and the work of construction begun, the city of Canton had not provided the right of way over which the sewer was to be laid.

[2] When the city enters into a contract with a contractor to build a building, or to lay a sewer, or to do any other work of that kind, it warrants, just the same as a private owner would warrant, the delivery of the site upon which the work is to be constructed. In other words, if the city of Canton makes a contract with the Casey Company to build a sewer between station 1 and station 50 of a certain type and dimensions, it guarantees absolutely the delivery to the contractor of that site, and it is responsible in damages to the contractor, just as a private owner would be responsible for damages to the contractor, and if the city or owner, from whatever cause, whether blamelessly or wrongfully, is unable to deliver the site upon which the contractor is to construct the sewer or other improvement, they would be responsible in damages to the same extent and in the same degree for the interruption of his work.

Now, in point of fact, the city of Canton did not have the entire right of way for the sewer. The sewer ran through the property of a gentleman by the name of Mr. Barber, according to the original plan, and he refused to permit them to cross, and thereupon the work of constructing the sewer by the plaintiff company was interrupted, and, while it does not appear, it may be safely inferred from this testimony, that when they did get the right of way and the right to cross over the property of Mr. Barber, they had to cross somewhere else, and the sewer had to be constructed under different conditions and to a certain extent of different materials, that is, as to the foundation item, and by that action, as testified to here by the engineer, and as the court would imply if the engineer had not testified to it, certain damage resulted to the contractor.

[3] I have carefully examined the contract, and it seems to me that the engineer was entirely right in his position that items of damage due to an interruption of the work, such as added expense due to disorganization of his force and the shifting of his material to other positions, were items of damage and expense which the contractor had the right to make demand for under article 17 within a certain number of days, and which it was the duty of the engineer and the authorities to estimate and to allow.

It would have been entirely proper for the city authorities to have made the payment, without requiring any supplementary contract in order to warrant the payment. It does not require a separate appropriation of any kind from the council of the municipality, but it is an expense that was included within the original authority conferred upon the service director by the resolution of the council and was

properly chargeable to the fund then appropriated and set apart for the construction of the sewer.

In view of the action of the engineer, and in view of these facts and the subsequent conduct of the city authorities, there can be no question here before this jury but that the contractor was entitled to his money. The city has gotten the benefit of it, the contractor having been afflicted with a loss. If there was damage resulting, it was damage which was due to the conduct of the city, and not to the conduct of the contractor, and, if the city had refused to pay it, the contractor would not have been without remedy.

For that reason alone it would seem to me that irregularities in the method of making the payment would not warrant the city, after it had made it, in recovering back that which the engineer allowed, and which should have been allowed and included in the first instance, and which, in my opinion, he would have been entirely justified and ought to have allowed in his final estimate, instead of handling it in the way in which it was done.

[4] That being so, irregularities in the method of making payments, of these added precautions, due perhaps to a mistaken opinion on the part of some one that it should not be done that way, but ought to be done through a supplementary contract, or that a supplementary contract ought to have been entered into in the first instance, will not justify an action by the city to recover back money paid under those circumstances.

Now, the law as to irregularity in the making of contracts of this kind works very differently when a plaintiff sues upon a contract made in violation of law, and when the city sues to recover back money rightfully paid or paid upon a contract which has been made in violation of law, but which has been performed. The latter situation was involved in the Fronizer Case, 77 Ohio St. 7, 82 N. E. 518.

In the case of Buchanan Bridge Co. v. Campbell, 60 Ohio St. 406, 54 N. E. 372, it was held, where the county authorities refused to pay for a bridge which they had gotten from the contractor under a contract entered into in violation of the statutes on the subject, that the contractor could not recover when he sued on the contract for the price of the bridge; the court holding that it would leave the parties to such unlawful transaction in the situation in which they had placed themselves. In other words, the contract having been entered into without conformity to the legal requirements, the contractor could not, when he came into court, prove the legality of the contract that he had acted under, and could not, therefore, maintain the burden of proof.

However, in the case of State v. Fronizer, 77 Ohio St. 7, 82 N. E. 518, the reverse of that situation was presented. There the county authorities had gotten the bridge, and when the estimates were presented they paid for it, and thereafter the county undertook to get that money back, claiming the contract illegal because of the lack, through inadvertence, of a certificate of the county auditor that the money is in the treasury to the credit of the fund, or had been levied and was in process of collection. There the Supreme Court said that the money

so paid could not be recovered back, there being no claim of unfairness or fraud in the making, or fraud or extortion in the execution of the contract for such work, nor any claim of effort to put the contractor in statu quo by the return of the bridge or otherwise; the same having been accepted by the board of commissioners and incorporated as part of the public highway.

The court in that case in effect said:

"The plaintiff here is not suing on an illegal contract to get his money back. He is holding onto money which he got, it is true, by virtue of a contract made in violation of law; but, inasmuch as the public got the property for that money, we will not permit the public's representatives to recover it back. He who comes in and seeks redress of that kind will not be heard to urge the illegality of the contract, in order to recover back that which had been paid, at least in good morals, in dealing with the other party."

That, I think, is the law, and that would be the law that would apply here, if a supplementary contract under section 4331 had been necessary back in May, 1915.

Perhaps, if a supplementary contract had been necessary, and the Casey Company had not been able to get an estimate, or had not been able to get the money and had to sue, they would fail to sustain the burden of proof; in other words, they would not be able, perhaps, to show or to prove a contract binding legally upon the city authorities to pay them that money. But if the city authorities, recognizing their normal obligation to pay for that which was morally due and ought to have been covered by the contract originally, issued a proper voucher and paid it, certainly the city authorities afterwards have no standing in court when they undertake to recover that money back, and it does not take from the strength of the position of the person who has received the money that he has thereafter, and at a date so late that on its face it looks as if it were a superfluity, or almost a subterfuge, gotten that contract under the circumstances shown in evidence in this case.

So that it seems to me that, viewing the counterclaim in any angle and from any aspect, the city is not entitled to recover from the Casey Company on either one of these items. The money has been paid to them, and they are entitled to the payment.

That leaves nothing, gentlemen of the jury, here for your consideration, except that which results from the admitted and conceded facts. It is admitted here, both in the answer and verbally before you, that the city of Canton, which is the defendant, is retaining three sums of money as a reserved percentage of 2 per cent. of the price to be paid to the plaintiff for constructing the sewers. The aggregate amount of these three items is $3,891.45; $1,190.99 bears interest from October 16, 1916, $1,190.81 bears interest from July 15, 1916, and $1,509.55 bears interest from August 20, 1916. The interest should be computed until the first day of this term of court, February 5, 1918, and you should return a verdict for the aggregate amount thus ascertained in favor of the plaintiff.